WILSON (MASON v.). See Case No. 9,257.

## Case No. 17,824.

### WILSON et al. v. MAXWELL.

[2 Blatchf. 316.] [1]

Circuit Court, S. D. New York. Oct., 1851.

CUSTOMS LAWS — ASCERTAINMENT OF QUANTITY — ALLOWANCE OF TARE—PENALTIES—APPRAISEMENT OF PACKAGES.

1. The tariff act of July 30th, 1846 (9 Stat. 42), did not vary the law previously in force regulating the method of ascertaining the quantity of merchandize imported. Such quantity is still to be ascertained by the rules prescribed in sections 58 and 59 of the act of March 2d, 1799 (1 Stat. 671, 672).

2. Accordingly, where soap in boxes was imported in 1850, held, that the dutiable weight was the gross weight of the soap and boxes, deducting only 10 per cent. as tare, as prescribed by section 58 of the act of March 2d, 1799, and that the importer was not entitled to an allowance of the actual weight of the boxes as tare.

[Cited in Cobb v. Hamlin, Case No. 2,922.]

3. But, the soap having been entered at the custom-house at a valuation based upon its net weight, after deducting the actual weight of the boxes, and the custom-house valuation, upon an allowance of only 10 per cent. on the gross weight as tare, having exceeded the invoice valuation by more than 10 per cent., and the collector having then imposed an additional duty or penalty of 20 per cent. upon the custom-house valuation, claiming that such penalty was authorized, in consequence of such excessive valuation, by section 8 of the act of July 30th, 1846 (9 Stat. 43): Held, that the penalty was illegally imposed.

4. The weight of the boxes, cases or packages in which goods are imported is not the subject of appraisement, within the meaning of section 8 of the act of July 30th, 1846.

5. The case of Grinnell v. Lawrence [Case No. 5,831], cited and applied.

This was an action to recover back money paid to the defendant [Hugh Maxwell] as collector of the port of New York. The facts were these: The plaintiffs [William S. Wilson and Francis Brown] imported from Marseilles into New York a quantity of castile soap in boxes, and entered it at the custom-house, in July, 1850, at the invoice weight of 11,749 pounds, and at the net weight, deducting the weight of the boxes as tare, of 9,436 pounds. The weight returned by the public weigher was 11,760 pounds, from which a

---

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

deduction of 10 per cent., or 1,176 pounds, was made for tare, leaving the net or dutiable weight at 10,584 pounds. The valuation of the importation on the entry, according to the net weight on the invoice, was $550. The valuation on the return of the weigher, after taking off the 10 per cent. tare, was $619 94, being an excess over the invoice valuation of $69 94, or more than 10 per cent. The price or value of the soap itself was not changed by the custom-house valuation. The plaintiffs claimed the right to enter the soap at its net weight of 9,436 pounds, deducting the actual weight of the boxes, but the collector imposed duties on 10,584 pounds, allowing only the 10 per cent. tare. He also imposed an additional duty or penalty of 20 per cent. upon the custom-house valuation of $619 94, because that exceeded the invoice valuation by more than 10 per cent. The plaintiffs paid, under protest, this additional duty or penalty, and also the duty on all beyond 9,436 pounds of soap, and then brought this action to recover back the amount so paid. A verdict was taken for the plaintiffs, subject to the opinion of the court.

John S. McCulloh, for plaintiffs.
J. Prescott Hall, Dist. Atty., for defendant.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. We think that the collector adopted the true interpretation of the law, in relation to the tare allowable. When duties are imposed on merchandize by the weight or measure, the importer is not required to pay for a greater quantity than actually arrives in the United States. U. S. v. Southmayd, 9 How. [50 U. S.] 637; Marriott v. Brune, Id. 619. But it lies with congress to prescribe the rules by which the quantity or value of merchandize imported shall be ascertained. Accordingly, it rests in its discretion to fix the particulars to be regarded in determining the quantity by weight of goods imported in boxes, casks, bags or other packages, and to exclude or include the boxes, &c., in the computation. If no regulation in that respect is adopted, the true principle is to consider the merchandize alone as subject to duty. Marriott v. Brune, Id. 619.

It is contended that the treasury circulars of March 24th, 1847, and January 5th, 1848, give the importer a right to the deduction of the actual tare on the importation of articles invoiced and entered by weight. We do not think that those circulars admit of such an interpretation. It would seem that the secretary of the treasury understood that the act of July 30th, 1846 (9 Stat. 42), in its arrangement of the method of imposing duties, had in effect supplanted the provisions of the 58th section of the act of March 2d, 1799 (1 Stat. 671), and he enjoined regulations to meet the case of importations of goods by weight in boxes, casks, &c. The regulations, however, expressly prohibit the allowance, by way of tare or draft, of a greater deduction than was given by the act of 1799; and, if the plaintiffs adopt the treasury circulars as the foundation of their right to tare, they must be confined to the limits of those instructions.

But we do not understand that the tariff act of 1846 has in any manner varied the law previously in force regulating the method of ascertaining the quantity of merchandise imported. The 4th section of the act of 1846 recognizes the existence of the 58th and 59th sections of the act of 1799 as the means of determining the weight or gauge or quantity of goods imported, when the invoice does not contain the weight or quantity or measure. We do not suppose that this 4th section has operation only in case of an entire omission, in the invoice, of any statement of weight or measure, but are inclined to think that the provision is intended to apply the then existing law to importations which would have been subject to it previous to the act of 1846, although the invoice is made up on a valuation only, without any statement of quantity. Otherwise the government might be concluded by the invoice, in case it gave the weight or quantity, and would have discarded all authority to test the accuracy of that statement. We think that the language of the 4th section of the act of 1846 may be satisfied, without attaching to it an implication evidently so directly at variance with the whole policy of the revenue laws. The language is rather indirect and involved, but the want of perspicuity seems to arise out of the aim of the person who drew the section to conform the system of ad valorem duties, made universal by the act of 1846, to the provisions of the then existing laws, which require the weight or measure of particular classes of merchandise; and, under the impression that importations of such articles may, under the new act, be made on an invoice of value alone, it directs the weight or measure of them to be made at the expense of the owner, agent or consignee. The section appears to have been introduced out of greater caution, and for the purpose of avoiding the construction contended for by the counsel for the plaintiffs, and which the circulars of the treasury department tend to countenance. The revenue laws, as modified from time to time by congress, are construed and administered as an entire system, the later acts not superseding the prior ones, unless they are in conflict with them or expressly repeal them. Aldridge v. Williams, 3 How. [44 U. S.] 1. The 7th and 8th sections of the act of 1846 recognize this principle, in the one case modifying the existing tariff law, and in the other referring to it as supplying the mode of ascertaining the dutiable value of imported commodities. The 4th section, in our view of the subject, effects two purposes only, both of them in consonance with and in furtherance of the existing law. First. In respect to goods subject to weight,

it removes all doubt as to the application of the act of 1799, under this new arrangement of duties, when the invoice does not contain the weight, by directing the goods to be weighed. Secondly. It provides that the owner or consignee shall bear the expense. When the invoice does contain a statement of weight, it must, under the directions of the 8th section of the act of 1846, be proceeded with conformably to the act of 1799.

The weight returned by the weighers in this case, pursuant to the 58th section of the act of 1799, determined the quantity of soap subject to duty, and the collector properly imposed and collected duties on 10,584 pounds, because, although that was beyond the actual weight of the soap itself, yet the whole importation, including its boxes, is made subject to duty, excepting only 10 per cent. therefrom for the assumed weight of the boxes. It was in the discretion of congress either to impose duties on the gross weight, or to deduct from that a fixed rate of tare, or to permit the importer to have the allowance of actual tare. The law in this instance specified the mode or rule by which the tare should be determined, and the importer can claim nothing beyond that.

The remaining question is, whether the collector could legally impose an additional duty or penalty of 20 per cent. on the appraised valuation of $619 94, the price or value of the soap itself not being changed. The 8th section of the act of July 30th, 1846, declares, that it shall be the duty of the collector to cause the dutiable value of imports to be appraised, estimated and ascertained, in accordance with the provisions of the then existing laws, and that, if the appraised value thereof shall exceed, by 10 per centum or more, the value declared on the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected and paid. a duty of 20 per centum ad valorem on such appraised value. It is to be observed, that the valuation adopted in the entry was not changed by the appraisers, so as to affect the justness of the entry valuation. No point is made on the part of the government, that the weight given in the entry was not accurate, and it was found to correspond with the custom-house weight within a small fraction. The only question presented is as to the right of the plaintiffs to enter the importation according to the true weight, without obtaining the consent of the collector and naval officer to the allowance of the actual tare. Does the deficiency in weight in the entry, arising from an erroneous claim of tare, constitute an excess of value over the value declared in the entry, so as to subject the whole importation to an additional duty of 20 per cent.? The principle involved in this inquiry was considered and decided by this court in Grinnell v. Lawrence [Case No. 5,831]. The court there say: "The eighth section of the act of July 30th, 1836, imposes this duty" (the additional duty or penalty of 20 per cent.) "in cases where the appraised value of the goods imported shall exceed, by 10 per cent. or more, the value as declared in the entry." The "appraised value," as used in this act of 1846 and in that of August 30th, 1842, and, indeed, in all of the revenue acts, means the value of the goods, to be estimated and ascertained by the appraisers, either according to the "actual cost," "actual value" or "market value," as the case may be, exclusive of charges. The doctrine adopted by the court in that case was, that the enhanced valuation which called for and authorized the additional duty of 20 per cent. had relation alone to the goods imported, and did not include those extraneous particulars which the appraisers added to the appraised value of the merchandise, under the special direction of the various tariff acts, in order to make up the dutiable value of the importation. In that case, charges were so added; in this case, the weight of cases or packages is added; but neither of them are subjects of appraisement. So far from that, in this instance, the "actual cost," "actual value" or "market value" of the boxes is not a matter upon which the judgment of the appraisers is in any way exercised. On the contrary, the gross weight of the importation is ascertained by the weigher, and then the proper officer of the custom-house, by an arithmetical process prescribed by statute, fixes the deduction to be taken from the gross weight, and the remainder is the dutiable quantity.

Our judgment upon the second point, therefore, is, that this importation was not subject to the additional duty of 20 per cent. exacted by the collector, and that the plaintiffs are entitled to recover that amount, with interest from the time of its payment. Judgment accordingly.

WILSON (MEEKER v.). See Case No. 9,-392.

WILSON (MILLS v.). See Case No. 9,616.

WILSON (MITCHELL v.). See Cases Nos. 9,671 and 9,672.

WILSON (MOYNAHAN v.). See Case No. 9,897.